IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
District Judge S. Kato Crews

Civil Action No. 1:23-cv-02860-SKC-NRN

DPF ALTERNATIVES, LLC,

    Plaintiff,

v.

DET DIESEL EMISSION TECHNOLOGIES, LLC, *et al.*

    Defendants.

---

### ORDER RE: MOTION TO DISMISS
### FOR LACK OF PERSONAL JURISDICTION

---

Plaintiff DPF Alternatives LLC is a nationwide franchise specializing in diesel particulate filter services for the diesel industry. In July 2021, Peter Lambe, a sales representative for Recore—Defendants DET Diesel Emission Technologies, LLC and Synergy Catalyst, LLC's trade name—contacted Plaintiff's franchisees regarding new and allegedly patented equipment. One of Plaintiff's franchisees sought permission to engage vendor services from Defendants, which Plaintiff granted. However, Plaintiff later discovered that Defendants' equipment was not subject to any patents and filed this action asserting claims under the Lanham Act and the Sherman Act as well as claims for false patents and tortious interference with contract. Dkt. 1.

1

Defendants seek dismissal based on a lack of personal jurisdiction. Dkt. 11. Plaintiff argues it has made a *prima facie* showing of jurisdiction and, if it hasn't, the Court should transfer this case to the Northern District of Texas. Dkt. 17. The Court has reviewed the Motion, related briefing, and applicable law. No hearing is necessary. For the following reasons, the Court transfers this case to the Northern District of Texas.

## STANDARD OF REVIEW

Defendants move to dismiss under Fed. R. Civ. P. 12(b)(2) alleging a lack of personal jurisdiction over them. The question of personal jurisdiction must be addressed before a court can reach the merits of a case because "a court without jurisdiction over the parties cannot render a valid judgment." *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1091 (10th Cir. 1998) (citing *Leney v. Plum Grove Bank*, 670 F.2d 878, 879 (10th Cir. 1982)).

The plaintiff bears the burden of establishing either general or specific jurisdiction over the defendants. *Rambo v. Am. S. Ins. Co.*, 839 F.2d 1415, 1417 (10th Cir. 1988). "Where, as in the present case, there has been no evidentiary hearing, and the motion to dismiss for lack of jurisdiction is decided on the basis of affidavits and other written material, the plaintiff need only make a *prima facie* showing that jurisdiction exists." *XMission, L.C. v. Fluent LLC*, 955 F.3d 833, 839 (10th Cir. 2020) (quoting *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995)).

The Court accepts the well-pleaded allegations (plausible, nonconclusory, nonspeculative facts) of the operative complaint as true "to the extent they are uncontroverted by the defendant's affidavits. If the parties present conflicting affidavits, all factual disputes must be resolved in the plaintiff's favor, and the plaintiff's *prima facie* showing is sufficient notwithstanding the contrary presentation by the moving party." *Wenz*, 55 F.3d at 1505 (internal quotation marks and citations omitted).

## ANALYSIS

"The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful contacts ties, or relations." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471–72 (1985) (internal quotation marks and citation omitted). Therefore, a "court may exercise personal jurisdiction over a nonresident defendant only so long as there exist minimum contacts between the defendant and the forum state." *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1979) (internal quotation marks and citation omitted). The "minimum contacts" requirement protects a defendant "against the burdens of litigating in a distant or inconvenient forum[;]" and ensures "the States, through their courts, do not reach out beyond the limits imposed on them by their status as coequal sovereigns in a federal system." *Id*. at 292. If minimum contacts are shown, the court must then determine whether the exercise of personal jurisdiction over the defendant would "offend traditional notions of fair play and

substantial justice." *OMI Holdings, Inc.*, 149 F.3d at 1091 (citing *Asahi Metal Industry Co. v. Superior Court of California*, 480 U.S. 102, 113 (1987)).

The Colorado long-arm statute extends jurisdiction to the greatest extent permitted by due process, which allows the court to bypass the statutory analysis and proceed with the due process inquiry. *AST Sports Sci., Inc. v. CLF Distribution Ltd.*, 514 F.3d 1054, 1057 (10th Cir. 2008) ("The Colorado Supreme Court has interpreted Colorado's long-arm statute to extend jurisdiction to the fullest extent permitted by the Due Process Clause of the Fourteenth Amendment.").

Consistent with due process, a court may exercise personal jurisdiction in one of two ways. First, a court may assert specific jurisdiction over a nonresident defendant "if the defendant has 'purposefully directed' his activities at residents of the forum, and the litigation results from alleged injuries that 'arise out of or relate to' those activities." *Burger King*, 471 U.S. at 472. Second, where a defendant has not engaged in forum-related activities, the court may nonetheless exercise general jurisdiction over the defendant based on the defendant's general business contacts with the forum state. *Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 415 (1984). However, "[b]ecause general jurisdiction is not related to the events giving rise to the suit, courts impose a more stringent minimum contacts test, requiring the plaintiff to demonstrate the defendant's 'continuous and systematic general business contacts.'" *Metropolitan Life Ins. Co. v. Robertson–Ceco Corp.*, 84 F.3d 560, 567 (2d Cir. 1996) (quoting *Helicopteros*, 466 U.S. at 416).

### A.    General Jurisdiction

"General jurisdiction in a forum other than the defendant's place of incorporation or principal place of business will exist only in 'exceptional cases' where the defendant's operations in the forum are 'so substantial and of such a nature as to render the corporation at home in that State.'" *Butler v. Daimler Trucks N. Am., LLC*, 433 F. Supp. 3d 1216, 1234 (D. Kan. 2020) (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 139 n.19 (2014)). Here, Plaintiff contends Defendants hold themselves out as maintaining regular business operations in Colorado, and therefore, exercising general jurisdiction is appropriate. The Court is not persuaded.

In support of its position, Plaintiff provides, without more, a screenshot of Defendants' website listing a single Denver address for Recore. Dkt. 17-1. But this evidence proves nothing regarding the jurisdictional analysis. "When a court takes judicial notice of publications like websites and newspaper articles, the court merely notices what was in the public realm at the time, not whether the contents of those articles were in fact true." *Hampton v. Root9b Techs., Inc.*, No. 15-cv-02152-MSK-MEH, 2016 WL 7868823, at *4 (D. Colo. Aug. 3, 2016), *report and recommendation adopted*, No. 15-cv-02152-MSK-MEH, 2016 WL 9735744 (D. Colo. Sept. 21, 2016), *aff'd*, 897 F.3d 1291 (10th Cir. 2018). Accordingly, while the Court may take notice of the fact that the Recore website listed a Denver address at the time Plaintiff accessed it, without more, the Court may not presume that this Denver location is Defendants' regular business operation. *See Braun v. United Recovery Sys., LP*, 14 F. Supp. 3d

5

159, 169 (S.D.N.Y. 2014) ("while it is true that '[t]he Second Circuit, and several district courts in [that] Circuit, have found it appropriate to take judicial notice of the contents of a party's website,' they have found it appropriate to do so 'for the fact of [the website's] publication,' not for the truth of any matter asserted therein.").

To be sure, Defendants clarify that this is the address of Plaintiff's own franchisee that stocks Defendants' parts. Dkts. 18, 18-1 at ¶¶14-15. According to Defendants, when a franchisee stocks Defendants' parts, it does so by ordering through Defendants' web portal. Defendants do not reach out to the vendors to make sales. *Id.* at ¶15. Defendants further attest they do not maintain any stores in Colorado. Dkt. 11-1 at ¶6. Considering these attestations, and Plaintiff's failure to present controverting evidence of substantial business operations in Colorado, the Court concludes Plaintiff has not made a *prima facie* showing of this Court's general jurisdiction over Defendants. *White v. Christian*, 474 F. Supp. 3d 1196, 1200 (D. Colo. 2020) (citing *Ten Mile Indus. Park v. Western Plains Serv. Corp.,* 810 F.2d 1518, 1524 (10th Cir. 1987) and *Mitchell v. King*, 537 F.2d 385, 386 (10th Cir. 1976)). And even without Defendants' attestations, the Court is not convinced a single store would constitute the type of substantial contacts with Colorado to consider Defendants at home in this jurisdiction such that an application of general jurisdiction would comport with due process. *See Butler*, 433 F. Supp. 3d at 1235 ("To find any defendant subject to the general personal jurisdiction of this Court because it sells its products

6

through a network of authorized dealers including dealers in [the forum state] would be unacceptably grasping.").

### B.    Specific Jurisdiction

Plaintiff argues specific jurisdiction is appropriate in this case "if [it] is viewed through the lens of contract." Dkt. 17 at p.9. Plaintiff also contends this Court has jurisdiction over Defendants based on their intentionally tortious conduct. Specifically, Plaintiff argues "defendants made numerous, intentional misrepresentations about its products and services," which allegedly interfered with Plaintiff's franchise contracts and caused harm under the false patent, and Lanham and Sherman acts. Dkt. 17 at pp.8-9.

In the context of a contract claim, the Court looks at "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' *actual course of dealing*." *Burger King*, 471 U.S. at 479 (emphasis added). "Phone calls, letters, facsimiles, and emails 'provide additional evidence that *the foreign defendant pursued a continuing business relationship* with the plaintiff.'" *AST Sports Sci., Inc. v. CLF Distribution Ltd.*, 514 F.3d 1054, 1059 (10th Cir. 2008) (quoting *Pro Axess v. Orlux Distrib., Inc.*, 428 F.3d 1270, 1278 (10th Cir.2005)) (cleaned up) (emphasis added).

When asserting specific jurisdiction based on intentionally tortious conduct, the Tenth Circuit has summarized the appropriate inquiry as requiring "(a) an intentional action, that was (b) expressly aimed at the forum state, with (c) knowledge

7

that the brunt of the injury would be felt in the forum state." *Old Republic Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d 895, 907 (10th Cir. 2017) (cleaned up). This inquiry "requires showing more than simply harm suffered by a plaintiff who resides in the forum state." *Id.* at 917 (citing *Walden v. Fiore*, 571 U.S. 277, 289 (2014)). Instead, the "relationship must arise out of contacts that the defendant *himself* creates with the forum and must be analyzed with regard to the defendant's contacts with the forum itself, not with persons residing there. The plaintiff cannot be the only link between the defendant and the forum." *Walden*, 571 U.S. at 277 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985); *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

Plaintiff's arguments suffer from several problems. Chief among them is there is no contract between the parties and, in fact, Defendants never sought a contractual relationship with Plaintiff. Dkt. 18-1 at ¶¶18-19. But even if there was a contract, Plaintiff would nevertheless fail to meet its burden in establishing personal jurisdiction. Although Plaintiff's response and its attached affidavit contend the parties engaged in protracted discussions, these documents are exceedingly light on the details of those discussions and the nature of the parties' relationship in general.

For example, Plaintiff does not specify which of Plaintiff's franchisees Defendants originally contacted regarding its products and where those franchisees were located. Such particulars are critical to determining whether Defendants intentionally directed any of its activities—tortious or otherwise—toward Colorado,

8

or whether they find themselves haled into a Colorado court by happenstance of Plaintiff's presence here. *See D & D Fuller CATV Const., Inc. v. Pace*, 780 P.2d 520, 526 (Colo. 1989) (a defendant should reasonably anticipate being haled into court when his intentional actions "are expressly directed at causing a harmful effect within the forum state").

Nor does Plaintiff detail when and where the various discussions, negotiations, and intentional misrepresentations took place. Outside of conclusory assertions of their existence, there is no laid-out course of dealing for the Court to evaluate when considering whether Defendants pursued a business relationship with Plaintiff. *AST Sports Sci., Inc.*, 514 F.3d at 1059. In fact, according to Defendants, Plaintiff's principals and several of its non-Colorado franchisees traveled to *Texas* to tour Defendants' manufacturing facilities and to *solicit Defendants* to enter contracts with the franchisees.[1] Dkt. 18-1 at ¶¶4-5.

It is Plaintiff's burden to establish personal jurisdiction and without these supporting details, it has failed to make a *prima facie* showing of specific personal jurisdiction over Defendants.

*    *    *

For the reasons shared above, the Court concludes Plaintiff has failed to meet

---

[1] Defendants also provide evidence that Plaintiff and Defendants entered into a nondisclosure agreement, which included a forum selection clause specifying any litigation must be brought in Texas. Dkt. 18-2. Although Plaintiff's claims do not arise from the NDA, it is further evidence that Defendants did not foresee defending any actions in Colorado.

9

its burden in establishing this Court's jurisdiction over the Defendants. However, as an alternative to dismissal, Plaintiff requests this case be transferred to the Northern District of Texas. Dkt. 17 at pp.12-13. Although Defendants did not directly address Plaintiff's request to transfer in their Reply brief, they did file a separate Motion to Transfer Venue (Dkt. 40) to that same district in Texas. Therefore, the Court considers Plaintiff's request to be unopposed. Consequently,

IT IS ORDERED that the Clerk of Court shall transfer this case to the Northen District of Texas.

DATED: July 29, 2024.

BY THE COURT:

S. Kato Crews
United States District Judge

10